## In re AIRCRASH DISASTER NEAR ROSELAWN, INDIANA, ON OCTOBER 31, 1994.

### Nos. 95 C 4593, MDL 1070.

United States District Court,
N.D. Illinois,
Eastern Division.

April 7, 1997.

Janice R. Forde, Kevin Michael Forde, Ltd., Chicago, IL, Michael L. Slack, Slack & Davis, L.L.P., Austin, TX, Gerard R. Lear, Speiser, Krause, Madole & Lear, Rosslyn, VA, Terry O'Reilly, Law Offices of O'Reilly & Collins, Menlo Park, CA, Thomas P. Meehan, Sherman, Meehan & Curtis, P.C., Washington, DC, James T. Crouse, Speiser & Krause, Rosslyn, VA, for Plaintiff.

Storrs Whitworth Downey, Landau, Omahana & Kopka, Ltd., Chicago, IL, for Ingersoll Milling Machine Company.

William Joseph Cook, Cook & Ritter, Chicago, IL, for Hilton Hotels Corporation.

Michael P. Connelly, Thomas F. Tobin, John M. Kelly, Connelly & Schroeder, Chicago, Il, for Avions de Transport Regional, G.I.E., A.T.R. Marketing, Inc., Alenia S.P.A. and Aerospatiale, Inc.

Jerold Sherwin Solovy, Anton Ronald Valukas, Sidney I. Schenkier, Jenner & Block, Chicago, IL, Charles William Douglas, Sara Gourley, Sheila Ann Sundvall, Sidley & Austin, Chicago, IL, for American Airlines, Inc. and AMR Corporation.

Jerold Sherwin Solovy, Anton Ronald Valukas, Sidney I. Schenkier, Jenner & Block, Chicago, IL, Charles William Douglas, Sara Gourley, Sheila Ann Sundvall, Sidley & Austin, Chicago, IL, Robert L. Alpert, Chapel Hill, NC, for AMR Leasing Corporation, AMR Eagle, Inc. and Robert H. Mittelman estate.

Jerold Sherwin Solovy, Anton Ronald Valukas, Sidney I. Schenkier, Jenner & Block, Chicago, IL, Charles William Douglas, Sara Gourley, Sheila Ann Sundvall, Sidley & Austin, Chicago, IL, Robert L. Alpert, Chapel Hill, NC, Thomas P. Meehan, Sherman, Meehan & Curtis, P.C., Washington, DC, for Simmons Airlines, Inc.

Richard Charles Palmer, Wildman, Harrold, Allen & Dixon, Chicago, IL, for Honeywell, Inc.

Nicholas J. Bua, Judge, Burke, Weaver & Prell, Chicago, IL, for Nicholas J. Bua.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Presently pending before the Court are over thirty cases arising from the fatal crash of American Eagle Flight 4184 in Indiana approximately two and one-half years ago. Defendant Simmons Airlines, Inc. has asked this Court to rule on the availability of punitive damages in those cases governed by the Warsaw Convention.[1] In support of their motion, the defendants simply note that essentially every court to consider this issue to date has held that punitive damages are not available for Warsaw Convention claims. *See, e.g., In re Korean Air Lines Disaster of September 1, 1983 ("KAL"),* 932 F.2d 1475, 1490 (D.C.Cir.1991); *In re Air Disaster at Lockerbie, Scotland,* 928 F.2d 1267, 1288 (2d Cir.1991); *Floyd v. Eastern Airlines, Inc.,* 872 F.2d 1462, 1489 (11th Cir.1989); *In re Air Crash Disaster at Gander, Newfoundland,* 684 F.Supp. 927, 933 (W.D.Ky.1987); and the cases following them; *but cf. Hill v. United Airlines, Inc.,* 550 F.Supp. 1048, 1056 (D.Kan.1982) (holding that a claim for intentional misrepresentation was not covered by the Warsaw Convention, but then inexplicably finding that Article 25 of the Convention permitted the recovery of punitive damages). All four of the leading cases, *KAL, Lockerbie, Floyd* and *Gander,* contain exhaustive analyses of the language, history, context and purposes of the Warsaw Convention, and the interaction between the Convention's purposes and framework and the law of punitive damages as it has developed in America.

---

1. Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934).

**152**

The plaintiffs contend, however, that these cases have been implicitly overruled by a recent Supreme Court case, *Zicherman v. Korean Air Lines Co., Ltd.*, —— U.S. ——, 116 S.Ct. 629, 133 L.Ed.2d 596 (1996), which held that the Warsaw Convention does not specify the damages that are available, instead leaving the question of damages to be determined by the domestic law that would normally govern in the absence of the Convention. The plaintiffs argue that, in light of this holding, the Convention must not bar punitive damages, and the earlier cases which found that it does must be wrong. The plain language of *Zicherman* cannot support the construction the plaintiffs would place upon it.

In *Zicherman*, the Supreme Court was confronted with the question of whether the plaintiffs, who were kin to a passenger killed in the downing of KAL Flight 007, could recover loss-of-society damages, a type of non-economic compensatory damages. Article 17 of the Warsaw Convention provides that the carrier will be liable for "dommage survenu," usually translated as "damage sustained," by reason of an on-board accident that causes personal injury or death. In considering the proper interpretation of "dommage survenu," the Court stated that that phrase simply means "legally cognizable harm," and that the Convention does not contain any intrinsic limitation on the elements of damages that are recoverable as compensation for that harm. *Id.*, —— U.S. at ——, 116 S.Ct. at 633. Instead, the availability of those damages are determined by the substantive law that would otherwise apply to the claim. In the KAL case, where the plane's destruction took place over international waters, the applicable law was the Death on the High Seas Act ("DOHSA"), 46 U.S.C.App. § 761. As DOHSA limited recovery for wrongful death to economic damages, the plaintiffs could not recover for loss of society. *Id.* at ——, 116 S.Ct. at 636.

Nothing in *Zicherman* addresses the availability of punitive damages against an air carrier when the claim is governed by the Warsaw Convention. Although *Zicherman* contains occasional broad phrases that sup-

port the plaintiffs' arguments here, there are ample indications in the decision that the Court was addressing only the various types of compensatory damages that may be available. "[T]he law of the Convention does not affect the substantive questions of who may bring suit and what they may be *compensated for.* ... [T]he Convention left to domestic law the questions of who may recover and what *compensatory damages* are available to them." *Id.* at ——, 116 S.Ct. at 634.[2] "[It is] clear that the questions of who may recover, and what *compensatory damages* they may receive, were regarded as intertwined; and that both were unresolved by the Convention and left to 'private international law'—*i.e.*, to the area of jurisprudence we call 'conflict of laws' ...." *Id.* at ——, 116 S.Ct. at 635. "We conclude that Articles 17 and 24(2) of the Warsaw Convention permit *compensation* only for legally cognizable harm." *Id.* at ——, 116 S.Ct. at 637. And most tellingly: "the damages recoverable—so long as they consist of compensation for harm incurred ("dommage survenu")—are to be determined by domestic law." *Id.* at ——, 116 S.Ct. at 635. All of these statements offer a clear indication that the Court's discussion in *Zicherman* concerned only damages that are compensatory in nature. Far from rejecting the lower courts' conclusions that punitive damages are unavailable under the Warsaw Convention, *Zicherman* actually supports that conclusion by discussing damages in Convention claims purely in terms of compensatory damages.

Moreover, punitive damages—at least as they are conceived by modern American courts—are quite different from compensatory damages in their nature and purpose. Unlike the damages implicitly referred to in Article 17, which are compensation for harms or injuries, "[p]unitive damages are not 'damages sustained' by a particular plaintiff. Rather, they are private fines levied by civil juries to punish a defendant for his conduct and to deter others from engaging in similar conduct in the future." *Gander*, 684 F.Supp. at 931 (citing *Int'l Brotherhood of Elec. Workers v. Foust*, 442 U.S. 42, 48, 99 S.Ct. 2121, 2125, 60 L.Ed.2d 698 (1979) and PROS-

**2.** We have added emphasis to the quoted materi-  al throughout this paragraph.

SER AND KEETON ON TORTS § 2 at 9–15 (5th ed.1984)). The fundamental differences between these two types of damages make it very unlikely that the Supreme Court intended to implicitly overrule the earlier case law on punitive damages by discussing in *Zicherman* the availability of various types of compensatory damages.

The plaintiffs argue that even if *Zicherman* did not directly overrule the earlier cases barring punitive damages, it undermined the reasoning of those cases. In this, the plaintiffs are only partially correct. The earlier cases were based upon several sources: (1) the language of Article 17, the provision of the Warsaw Convention that fixes the parameters of carriers' liability under the Convention; (2) the intent of the Convention's creators, as reflected in the drafting history of the Convention, including commentary on the scope of the Convention; (3) the state of French law at the time the Convention was created; (4) the goal of uniformity, one of the principal purposes of the Convention; and (5) the nature of the Convention as a balance between presumed liability on the part of the carriers and limited recovery by claimants. *See KAL*, 932 F.2d at 1485–90; *Lockerbie*, 928 F.2d at 1280–82, 1287–88; *Floyd*, 872 F.2d at 1483–88; *Gander*, 684 F.Supp. at 930–33. In *Zicherman*, the Supreme Court criticized reliance on two of these sources: the historical substance of French law; and the goal of uniformity, at least insofar as that goal is treated as an overriding concern. *See Zicherman*, —— U.S. at ——, 116 S.Ct. at 633 (courts interpreting the Warsaw Convention may look to 1929 French law to determine the appropriate translation of the words of the treaty, but should not consider themselves bound by French law in applying those words to the facts at hand) and —— U.S. at ——, 116 S.Ct. at 636 (rejecting uniformity as a reason to create a federal common law of damages to be applied to Warsaw Convention claims; "this [damages] is not an area in which the

imposition of uniformity was found feasible" by the treaty's signatories).

Even without these two bases of support, however, the case law denying punitive damages in Warsaw Convention claims remains fundamentally sound, in this Court's opinion. And when faced with the same question of punitive damages, this Court reaches the same conclusion those courts did. This conclusion is based upon many of the same sources relied upon by the earlier cases: the language of Article 17, which "establishes the liability of international air carriers for harm to passengers" and is "entirely compensatory in tone," *Gander*, 684 F.Supp. at 931; the dearth of any evidence indicating that the treaty's drafters contemplated that carriers were or could be liable for punitive damages; and the overall scheme of the Convention as a trade-off establishing a presumption of liability by the carrier in exchange for limited damages, a scheme that could be upset by the unpredictable nature of punitive damages awards.[3] All of these reasons have been covered in great depth by other courts, and we see no need to reproduce their efforts here. Therefore, for the reasons stated briefly above and set forth in more detail in *KAL, Lockerbie, Floyd and Gander*, we hold that punitive damages are not available in claims governed by the Warsaw Convention.

The Court grants defendant Simmons Airlines' motion for summary judgment on the punitive damages counts in Warsaw Convention cases [463–1].

---

**3.** We reject, as have other courts, the plaintiffs' arguments (1) that Article 25 of the Convention contemplates the imposition of punitive damages, *see KAL*, 932 F.2d at 1488–89; *Lockerbie*, 928 F.2d at 1285–87; *Floyd*, 872 F.2d at 1483–85; *Gander*, 684 F.Supp. at 932; and (2) that the

tendency of some civil law courts to impose higher compensatory damages when the defendant's conduct is egregious means that American punitive damages should also be available under the Convention. *See Lockerbie*, 928 F.2d at 1281–82; *Floyd*, 872 F.2d at 1487 n. 42.