**In re AIR CRASH OFF POINT MUGU, CALIFORNIA, on JANUARY 30, 2000.**

No. MDL–00–1343–CAL.

United States District Court,
N.D. California.

May 1, 2001.

Frank M. Pitre, Cochett, Pitre & Simon, Burlingame, CA, for plaintiffs' Liaison Counsel.

Terry O'Reilly, Michael Danko, O'Reilly, Collins & Danko, San Mateo, CA, for Lawrence Baldridge, Katherine Voronoff.

Paul J. Hedlund, Mary F. Schiavo, J. Clark Aristei, Robert E. Guilford, John A. Greaves, Baum, Hedlund, Aristei, Guilford & Downey, Los Angeles, CA, for Eugene Batdorf, Anita Cuthbertson, Susan Da Silva, Diana Davies, Julie D. Friedman, Mary Hall, Frederick Miller, Velda Pearson, Patricia Sanchez, Earlene Shaw, Pamela Sparks, Richard Thorgrimson.

Jamie R. Lebovitz, Nurenberg, Plevin, Heller & McCarthy Co., L.P.A., Cleveland, OH, Jeffrey P. Holl, Gordon–Creed, Kelley, Holl & Sugerman, San Francisco, CA, for Julio Bermudez.

Jamie R. Lebovitz, Nurenberg, Plevin, Heller & McCarthy Co., L.P.A., Cleveland, OH, Richard Atherton, Redmond, WA, for Paul Bernard.

Phillip Paul Weidner, Phillip Paul Weidner & Associates, Anchorage, AK, David George, Juneau, AK, for Malcolm Branson.

Jamie R. Lebovitz, Nurenberg, Plevin, Heller & McCarthy Co., L.P.A., Cleveland, OH, Carl Wolf, Callaway & Wolf, San Francisco, CA, for Elizabeth Bryant, Jovanna Lugue.

Jamie R. Lebovitz, Nurenberg, Plevin, Heller & McCarthy Co., L.P.A., Cleveland, OH, John Grey, Grey and Nevin, San Rafael, CA, for Bonnie Davis.

Marcus Topel, William M. Goodman, Topel & Goodman, P.C., San Francisco, CA, Robert A. Clifford, Kevin P. Durkin, Clif-

ford Law Offices, P.C., Chicago, IL, for Deo, Prasad, Binod Prasad, Vinall Stooke, Susan Wilkie.

Brian J. Panish, Greene, Broillet, Taylor, Wheeler & Panish, LLP, Santa Monica, CA, Paula A. Wyatt, James S. Rogers, Christopher A. Bandas, Wyatt, Wyatt & Cowley, Corpus Christi, TX, Brian Stuart Koukoutchos, Mandeville, LA, for Canderlario Estrada-Pena.

Michel F. Baumeister, Baumeister & Samuels, New York, NY, for Russell–Figliomeni.

Jamie R. Lebovitz, Nurenberg, Plevin, Heller & McCarthy Co., L.L.P., Cleveland, OH, for Janis Ost Ford.

Robert A. Clifford, Kevin P. Durkin, Clifford Law Offices, P.C., Chicago, IL, Antonio M. Romanucci, Scott E. Encher, Romanucci & Blandin, Chicago, IL, for Julie D. Friedmann.

James S. Bostwick, Erik L. Peterson, Bostwick & Associates, San Francisco, CA, for Irma Noemi Clemetson, Galindo, for Sheila Lopez, Morales de Marques, Lillian Carolina Salazar de Bermudez.

Richard H. Schoenberger, Ronald H. Wecht, Walkup, Melodia, Kelly & Echeverria, San Francisco, CA, for Thomas Gandesbery.

Richard A. Ergo, Bradley R. Bowles, Walnut Creek, CA, for Jon Goslee.

Albert R. Abramson, Abramson & Smith, San Francisco, CA, Francis G. Fleming, Milton G. Sincoff, Of Counsel, Kreindler & Kreindler, New York, NY, for Sharon Oti Hardy.

Jamie R. Lebovitz, Nurenberg, Plevin, Heller & McCarthy Co., L.L.P., Cleveland, OH, Gerald Clausen, Wolff, Ellis & Clausen, LLP, San Francisco, CA, for Barbara Hatleberg, Jeff Hatleberg, Estate of Glenn Hatleberg.

Richard H. Schoenberger, Ronald H. Wecht, Walkup, Melodia, Kelly & Echeverria, San Francisco, CA, for Robert Hovey, Gilbert Manning.

Lionel T. Aiken, Douglas A. Marshall, Kay & Merkle, San Francisco, CA, for Ing.

Jamie R. Lebovitz, Nurenberg, Plevin, Heller & McCarthy Co., L.L.P., Cleveland, OH, Spencer T. Malysiak, Gold River, CA, for Caryn Jones.

Niall P. McCarthy, Cotchett, Pitre & Simon, Burlingame, CA, for Cory Karlsson.

Thomas J. Brandi, Law Offices of Thomas J. Brandi, San Francisco, CA, for Estate of Carol Karlsson.

John M. Poswall, Aram Kouyoumdjian, Poswall & White, Sacramento, CA, for Betty H. Knudson.

Jeoffrey L. Robinson, Robinson Calcagnie & Robinson, Newport Beach, CA, Brian J. Panish, Greene, Broillet, Taylor, Wheeler & Panish, LLP, Santa Monica, CA, for Raymond Laigo.

Jamie R. Lebovitz, Nurenberg, Plevin, Heller & McCarthy Co., L.L.P., Cleveland, OH, John M. Elliott, Elliott Law Offices, Hillsboro, OR, for James Long.

Lawrence S. Viola, Knapp and Viola, San Mateo, CA, for Maria Quintero Luna.

Garrett Moore, Stephen Jacques, Moore, O'Brien, Jacques & Yelenak, Cheshire, CT, for William Margiotta.

Juanita M. Madole, John J. Veth, Speiser Krause, Irvine, CA, for Reina Isabel Marquez Morales.

Marcus Topel, William M. Goodman, Topel & Goodman, P.C., San Francisco, CA, Robert A. Clifford, Kevin P. Durkin, Brian T. Nash, Clifford Law Offices, P.C., Chicago, IL, for Lawrence C. Nelson.

Alan S. Yee, Hunter Pyle, Siegel & Yee, Oakland, CA, for Frances Han Nivolo.

Michael N. White, Richard H. Friedman, Friedman, Rubin & White, Tacoma, WA, for Vera Plumb.

Marcus Topel, William M. Goodman, Topel & Goodman, P.C., San Francisco, CA, for Gabriel Poll.

M. Jean Johnston, San Francisco, CA, John P. Coale, David K. Leitz, Julia W. McInery, Deborah L. St. Jean, Coale Cooley Lietz McInerny, Washington, DC, for Dale Rettinger.

John M. Poswall, Aram Kouyoumdjian, Poswall & White, Sacramento, CA, for Lois D. Roesle.

Robert F. Hedrick, Hedrick Law Firm, Seattle, WA, Frank Smith, Osborn Smith, PLLC, Seattle, WA, James P. Pokorny, Law Offices of James P. Pokorny & Associates, San Diego, CA, for Ryan.

Albert R. Abramson, Abramson & Smith, San Francisco, CA, James P. Kreindler, Kreindler & Kreindler, New York, NY, for Philip Salyer.

Joseph W. Carcione, Jr., Stephen J. Purtill, Gary W. Dolinski, Law Offices of Joseph W. Carcione, Jr., Redwood City, CA, for Jesse Smith.

Susan Injijian, Gerald C. Sterns, Eric M. Steinle, Sterns & Walker, Oakland, CA, Norman La Force, Howie, Long, LaForce & Smith, El Cerrito, CA, David L. Crowe, Law Office of Robert R. Poindexter, San Francisco, CA, for Bonnie Tansky, Marilyn Thompson.

Richard H. Schoenberger, Ronald H. Wecht, Walkup, Melodia, Kelly & Echeverria, San Francisco, CA, for William Wilkie.

Jamie R. Lebovitz, Nurenberg, Plevin, Heller & McCarthy Co., L.P.A., Cleveland, OH, Bruce Buskirk, Buskirk Law Offices, Inc. P.S., Silverdale, WA, for Gregory Williams.

Mark A. Dombroff, Dane B. Jaques, Michael W. Kerns, Dombroff & Gilmore, P.C., Washington, DC, Arthur I. Willner, Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone, Marina Del Rey, CA, for Alaska Airlines.

Ronald A. McIntire, Charles S. Kim, Perkins Coie LLP, Santa Monica, CA, Keith Gerrard, Bruce D. Campbell, Mack H. Shultz, Jr., Theresa E. Pruett, Perkins Coie LLP, Seattle, WA, for Boeing and McDonnell Douglas.

Fred J. Meier, Winstead Sechrest & Minick, Dallas, TX, Counsel for Defendant Peacock Engineering, Nortek, and MPDC.

Martin E. Rose, Kristina Kennedy, Michael Richardson, Jeffrey W. Hightower, Rose & Walker, L.L.P., Dallas, TX, Counsel for Derlan Industries, Ltd. and Derlan Industries, Inc.

Martin E. Rose, Kristina Kennedy, Michael Richardson, Jeffrey W. Hightower, Rose & Walker, L.L.P., Dallas, TX, Allan M. Bower, Jonathan S. Morse, Carolyn J. Shields, The Bailey Law Firm, Santa Monica, CA, for Trig Aerospace.

James W. Hunt, Shalem A. Massey, Mendes & Mount, Los Angeles, CA, John D. Wilson, Shilpa Bhatia, Wilson Smith Cochran Dickerson, Seattle, WA, for Defendant Equilon Enterprises, LLC.

Gregory C. Read, Sedgwick, Detert, Moran & Arnold, San Francisco, Counsel for Shell Oil Company.

## ORDER ON MOTIONS

LEGGE, District Judge.

Defendants have made motions for judgment on the pleadings and for partial summary judgment. Plaintiffs oppose the motions, and have also requested additional discovery under Rule 56(f) of the Federal Rules of Civil Procedure. The motions have been briefed, argued and submitted for decision. The court has reviewed the moving and opposing papers, the record of

the case, the arguments of counsel and the applicable authorities, and rules as follows:

## I.

Defendant Alaska[1] moves for judgment on the pleadings regarding the claims of the representatives of the passengers killed in the crash. Alaska seeks a determination that the cases brought on behalf of the passengers are subject to the Warsaw Convention; and that their claims for punitive damages and for pre-impact emotional distress are barred by the Warsaw Convention.

■ It is clear, and indeed the parties do not dispute, that the Warsaw Convention as modified by the Montreal Protocol No. 4 provides the exclusive basis for the passengers' claims against Alaska. *See* Convention for the Unification of Certain Rules Relating to International Transportation by Air, October 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934) (the "Warsaw Convention"). *See also El Al Israel Airlines, Ltd. v. Tseng,* 525 U.S. 155, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999) (holding that the Warsaw Convention is the passengers' exclusive remedy against an international carrier). Alaska is also a signatory to the International Air Transportation Authority ("IATA") Intercarrier Agreement on Passenger Liability. Under the IATA agreement, a carrier such as Alaska assumes liability for an injury caused by an accident within the meaning of the Warsaw Convention unless it can prove that it took all necessary measures to avoid the accident. *See Cortes v. American Airlines,* 177 F.3d 1272, 1281–82 n. 5 (11th Cir. 1999).

■ The Warsaw Convention, however, does not allow all possible claims against an air carrier. At issue here are the Convention's prohibitions against punitive damages and against emotional dis-

tress claims. All claims which are allowed by the Convention are then evaluated under the standards of the applicable domestic law. The United States Supreme Court has said that the Warsaw Convention provides "nothing more than a pass through, authorizing [a court] to apply the law that would govern in the absence of the Warsaw Convention." *Zicherman v. Korean Air Lines,* 516 U.S. 217, 229, 116 S.Ct. 629, 133 L.Ed.2d 596 (1996). If a claim is permitted by the Convention, the analysis of the claim is then governed by the law of the forum, including the forum's choice of law rules. *See Insurance Company of North America v. Federal Express Corporation,* 189 F.3d 914, 919–20 (9th Cir.1999). As the Ninth Circuit said in that case: "Although an international treaty governs the liability between the parties in the instant dispute, our choice of law analysis under the Warsaw Convention is no different than it would be under the familiar *Erie* doctrine. This is so because the Supreme Court has 'admonished lower courts from developing federal common law under cover of advancing the goal of uniformity in Warsaw Convention cases.'" *Id.*

## II.

Since the Warsaw Convention governs the claims between Alaska and its passengers, the first substantive question is whether the Convention permits awards of punitive damages. If the Convention does not allow such damages, then the claim is barred regardless of the law of a particular jurisdiction.

■ This court is of the opinion that the right to recover from the carrier, Alaska, under the Convention is limited to compensatory damages, and does not include punitive damages. That conclusion is sup-

---

1. The word "Alaska" includes Alaska Airlines Inc. and Alaska Air Group, Inc.

ported by numerous cases. *In re Korean Air Lines Disaster of September 1, 1983*, 932 F.2d 1475, 1485–90 (D.C.Cir.), *cert. denied*, 502 U.S. 994, 112 S.Ct. 616, 116 L.Ed.2d 638 (1991); *In re Air Disaster at Lockerbie, Scotland on December 21, 1988*, 928 F.2d 1267, 1284 (2d Cir.) *cert. denied* 502 U.S. 920, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991); *Floyd v. Eastern Airlines, Inc.*, 872 F.2d 1462, 1483 (11th Cir.1989), *rev'd on other grounds*, 499 U.S. 530, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991); *In re Air Crash Disaster at Gander, Newfoundland on Dec. 12, 1985*, 684 F.Supp. 927, 931 (W.D.Ky.1987); *Pescatore v. Pan American World Airways, Inc.*, 97 F.3d 1, 14 (2d Cir.1996); *Laor v. Air France*, 31 F.Supp.2d 347, 350 (S.D.N.Y.1998); *Jack v. Trans World Airlines*, 854 F.Supp. 654, 663 (N.D.Cal.1994); *Harpalani v. Air-India, Inc.*, 634 F.Supp. 797, 799 (N.D.Ill. 1986); *In re Aircrash Disaster Near Roselawn, Indiana on October 31, 1994*, 960 F.Supp. 150, 153 (N.D.Ill.1997).

Although those reported cases do not include decisions by the Ninth Circuit, this court has no reason to believe that, in the face of this overwhelming body of law, the Ninth Circuit's decision would be any different.

Plaintiffs argue that the rule so clearly established by those cases has been changed by the *Zicherman* decision. Plaintiffs contend that *Zicherman*'s "pass through" language authorizes a court to apply the law that would govern in the absence of the Warsaw Convention, including punitive damages if the law of the forum provides for them. However, this court does not believe that *Zicherman* has such a sweeping impact. The court is of the opinion that the Supreme Court's "pass through" language was discussing only those claims that were not otherwise barred by the Warsaw Convention, and that the Court did not mean to overrule the prohibitions established by the Con-

vention. Several courts have rejected plaintiffs' arguments. As one post *Zicherman* court stated, "the case law denying punitive damages in Warsaw Convention claims remains fundamentally sound." *In re Aircrash Disaster Near Roselawn, Indiana*, 960 F.Supp. 150, 153 (N.D.Ill. 1997). This court agrees.

IT IS THEREFORE ORDERED that judgment on the pleadings is GRANTED in favor of Alaska and against the representatives of the passengers on their claims for punitive damages.

## III.

▇▇▇ The Warsaw Convention also precludes claims for purely emotional distress. *Eastern Airlines Inc. v. Floyd*, 499 U.S. 530, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991). As the Supreme Court there stated, "An air carrier cannot be liable under [the Warsaw Convention] when an accident has not caused a passenger to suffer death, physical injury, or physical manifestation of injury." *Id.* at 552, 111 S.Ct. 1489. And claims for physical injury purely descended from emotional distress are also prohibited by the Convention. *See El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 172, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999).

▇▇▇ Alaska therefore contends that the representatives of the passengers cannot recover for pre-impact terror, because those claimed injuries are purely emotional in nature. Plaintiffs argue that they are not seeking recovery for purely emotional injuries. They contend that they are seeking recovery for emotional distress *arising out of physical injuries* to the passengers. This type of emotional distress claim is permitted by the Warsaw Convention. *See Jack v. Trans World Airlines*, 854 F.Supp. 654, 667 (N.D.Cal.1994) (collecting the cases holding that emotional distress is cognizable under the Warsaw Convention

if the emotional distress arises out of a physical injury).

Plaintiffs argue that during the approximately half hour before the crash, the passengers experienced a violent ride that caused them physical injuries, which can serve as the predicate for their emotional distress claims. Because of the destruction of the plane and the physical evidence caused by the crash, the only evidence which plaintiffs have so far been able to present on this argument is the opinion of their expert witnesses.

In the context of the present motion by Alaska, this court need go no further in its analysis of this issue. That is, this is a motion for judgment on the pleadings. At least some of the complaints by the representatives of the passengers allege that the passengers did suffer pre-impact *physical* injuries. Since that allegation is in the complaints, this court must accept it as true in a motion for judgment on the pleadings. Therefore, the motions by Alaska for judgment on the pleadings as to the pre-impact emotional distress claims are DENIED, without prejudice.

The court of course recognizes that this only postpones answering the issue. The issue will undoubtedly arise in a later motion for summary judgment,[2] when it will be considered under the requirements of Rule 56. The issue may also involve Rules 702–705 of the Federal Rules of Evidence concerning expert testimony. That is, because the crash has destroyed the physical evidence, any evidence of pre-impact physical or emotional injuries must probably come from the parties' experts. And the testimony of the experts may have to be evaluated under the *Daubert* standard, either on the papers or in a hearing.

**IV.**

■ The next issue raised by the motions is what law is to be applied to the claims in these cases. As to Alaska, that means what law applies to all claims against it, aside from those for punitive damages and for purely emotional distress which are barred by the Warsaw Convention. As to all other defendants, the issue is what law applies to all of the claims against them.

Plaintiffs seek the application of maritime law. Defendants generally seek, by the application of choice of law rules, the law of the decedents' or the defendants' domiciles.

The flight originated in Puerto Vallarta, Mexico and its first scheduled landing was to be in San Francisco, California. The ultimate destination was Seattle, Washington. The flight crashed in the ocean off of California. Various state jurisdictions therefore have contacts with these cases. They include the states of the parties' domiciles, and the states where various acts were done.

**A.**

The parties agree that the Death on the High Seas Act, 46 U.S.C.App. §§ 761–767 ("DOHSA"), does not apply, because this accident did not occur on what is defined as the "high seas." *See* DOHSA 46 U.S.C.App. § 761 ("high seas" means those waters "beyond a marine league from the shore of any State, or the District of Columbia, or the Territories of the United States"). But because the crash occurred in navigable waters of the United States, admiralty jurisdiction must be considered.

**2.** The issue is also addressed in the pending motions of other defendants. However, those motions pertain to *state* laws, which may be rendered moot by this court's decision on the application of maritime law, discussed below.

■ Admiralty jurisdiction does not arise in aviation crash cases simply because the crash or the wrongful conduct occurred on or over navigable waters. *See Executive Jet Aviation, Inc. v. Cleveland*, 409 U.S. 249, 268, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). In *Executive Jet*, a commercial flight was scheduled from Ohio to New York. The plane flew into a flock of seagulls shortly after takeoff from a lakeside airport. The plane descended back toward the runway and struck an airport fence and a pickup truck before coming to a rest in Lake Erie, on navigable waters within the territorial sea of Ohio. The Supreme Court held that the mere maritime locale of an aviation accident is not sufficient to confer admiralty jurisdiction. *Id.* at 270–71, 93 S.Ct. 493: "It is clear, therefore, that neither the fact that a plane goes down on navigable waters nor the fact that the negligence 'occurs' while a plane is flying over such waters is enough to create such a relationship to traditional maritime activity to justify the invocation of admiralty jurisdiction." Instead, the Court held that admiralty jurisdiction exists in aviation accidents only where: (1) the alleged wrong occurred on or over navigable waters, and (2) the wrong bears "a significant relationship to a traditional maritime activity." *Executive Jet*, 409 U.S. at 268, 93 S.Ct. 493.

It is not disputed here that the alleged wrong—the conduct or the proximate result of it—took place on or over navigable water. Therefore, the first prong of the test is met. The issue here is the second prong; that is, does this accident bear "a significant relationship to a traditional maritime activity"? *Executive Jet* did not expressly define when an aircraft accident satisfies that requirement. Its holding made clear that this requirement is not satisfied just because an airplane crashed into water while on a domestic flight between two mainland cities. *Executive Jet* did intimate that a plane on a transoceanic

flight, or a plane fulfilling a role traditionally performed by a vessel, might satisfy it. *Executive Jet*, 409 U.S. at 272, 93 S.Ct. 493.

■ Since *Executive Jet*, courts—including the U.S. Supreme Court—have found a "significant relationship to a traditional maritime activity" where the facts were similar to those intimated. In other words, admiralty jurisdiction may arise where the airplane was fulfilling a role that, but for air travel, would have been done by a vessel. *See Offshore Logistics v. Tallentire*, 477 U.S. 207, 209, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986) (admiralty jurisdiction applies to crash of helicopter en route to offshore oil rig); *Williams v. United States*, 711 F.2d 893, 896 (9th Cir. 1983) (admiralty jurisdiction lies over wrongful death claim where accident occurred in mid-Pacific Ocean); *Roberts v. United States*, 498 F.2d 520, 523 (9th Cir. 1974) (applying maritime law to transoceanic flight, noting that "before the advent of aviation, such shipping could only be performed by waterborne vessels"); *In re Air Disaster Near Honolulu*, 792 F.Supp. 1541, 1543 (N.D.Cal.1990) (maritime law applies to mid-air accident 85 miles from Honolulu).

Defendants attempt to distinguish this body of authority by asserting that this case is more like the facts in *Executive Jet*. That is, this was a flight between two mainland locations that merely followed the coastline. Defendants argue that unlike *Offshore Logistics, Williams, Roberts* or *Honolulu*, this is not a case involving transoceanic travel to a destination that can only be reached by sea. Instead, defendants argue, transportation between Mexico and California or Washington is land based and is not a "traditional maritime activity."

Plaintiffs respond with evidence and arguments showing that this flight had a

significant relationship to a traditionally maritime activity. Namely, the maritime nexus here is alleged to be the coastwise transportation of passengers from Puerto Vallarta to San Francisco and Seattle. Plaintiffs offer evidence which shows that prior to air travel, Puerto Vallarta was primarily (if not exclusively) reached by ship. Plaintiffs also point to the fact that this flight and other similar flights flew extensively over the sea. Focusing merely on the fact that Puerto Vallarta *can* be reached by land incorrectly limits the scope of the maritime nexus inquiry, according to plaintiffs. The focus, say plaintiffs, should be on the *traditional* mode of commercial transportation, not on what modes of transportation are possible. In reply, defendants attempt to rebut plaintiffs' evidence of a maritime nexus between Puerto Vallarta and the United States. In short, they argue that because the two destinations were both on the mainland, *Executive Jet* precludes admiralty jurisdiction.

This court concludes that plaintiffs' position is supported by the facts and the authorities. The maritime air crash cases, *Offshore Logistics, Williams, Roberts* and *Honolulu,* stand for the proposition that admiralty jurisdiction lies if, but for aviation, the journey would have been conducted by sea. In this respect Puerto Vallarta is more like Hawaii than New York—the destination of the *Executive Jet* aircraft. Traditionally and but for air travel, passengers primarily traveled to and from Puerto Vallarta by sea. *See, e.g.,* Plf's Exhibits in Opp. to Alaska's Motion, Exhibits 27–35. While there is no disputing the existence of road and rail alternatives to such ship travel, there is little evidence that they are the dominant means of transportation. *Executive Jet* and its progeny do not preclude admiralty jurisdiction just because the departure and arrival cities

are both on the mainland. And the other cases cited above support the application of maritime law.

IT IS THEREFORE ORDERED that the law which applies to all of the claims [3] in these suits by the passengers' representatives is maritime law.

### B.

Defendants assert that even if there is admiralty jurisdiction, the United States Supreme Court's decision in *Yamaha Motor Corp. v.. Calhoun,* 516 U.S. 199, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996), requires the application of *state* law to wrongful deaths that occur in state territorial waters. *See id.* at 214, 116 S.Ct. 619.

However, *Yamaha* does not mandate the application of state law to deaths in territorial waters. *Yamaha* arose from a wrongful death action brought by the survivors of a person who died while jet-skiing in the territorial waters of Puerto Rico. Although the case was within federal admiralty jurisdiction, plaintiffs relied on state wrongful death law. The defendant argued that maritime remedies preempted any state wrongful death law. The Supreme Court disagreed and found that, absent some special admiralty statute, state remedies remain applicable and exist concurrently with the remedies available under maritime law for deaths occurring in territorial seas. *See Yamaha,* 516 U.S. at 216, 116 S.Ct. 619. But the *Yamaha* case was concerned with expanding remedies, not limiting them as defendants seek to do here. The implication of *Yamaha* is that plaintiffs may choose a state remedy, but they are also free to choose a federal one if they wish. If admiralty jurisdiction exists, as it does here, *Yamaha* does not compel the application of state law. Plaintiffs

---

**3.** That is, all claims permitted by the Warsaw Convention.

have made their selection of maritime remedies in these motions.

### C.

Several consequences of importance follow from this court's conclusion that maritime law applies.

First, maritime law encompasses many of the *subjects* raised by the issues in these suits. The following is a brief statement of the scope of the applicable maritime law. However, this statement is not intended to be (1) a precise definition of what the maritime law is, or (2) a decision on how that law applies to the issues in this case. That will come as further motions are filed and briefed. Rather, the court is merely noting that the following *subjects* relevant to these cases are addressed by maritime law.

■ Maritime law recognizes both wrongful death actions and survival actions.

■ The wrongful death remedy was created by the United States Supreme Court in *Moragne v. States Marine Lines,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). A *Moragne* action is independent of any action the decedent may have for his own personal injuries. *Sea–Land Services, Inc. v. Gaudet,* 414 U.S. 573, 578, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974). The wrongful death cause of action may be based on negligence or strict liability principles as defined by substantive maritime law. *See Nelson v. United States,* 639 F.2d 469, 473 (9th Cir.1980); *Pan–Alaska Fisheries, Inc. v. Marine Construction & Design Co.,* 565 F.2d 1129, 1135 (9th Cir. 1977). Damages available under *Moragne* include pecuniary and non-pecuniary damages. Pecuniary damages include pre-judgment loss of wages, future loss of earning capacity, medical expenses, loss of support, loss of services and funeral expenses. *See* A. Grant Jr., *Benedict on Admiralty* § 5.01[E] (2000). Non-pecuni-

ary damages that may be recovered by the decedent's beneficiaries include loss of consortium and loss of society. *Sea–Land Services,* 414 U.S. at 584, 94 S.Ct. 806; *Sutton v. Earles,* 26 F.3d 903, 914–15 (9th Cir.1994). The survivor's grief is not compensable. *Id.*

■ No court has spoken on the issue of whether punitive damages are available in a non-seafarer *Moragne* action. However, commentators suggest that punitive damages might be available given the long history of such awards in admiralty cases. *See Benedict* at § 5.04[D]; T. Schoenbaum, *Admiralty and Maritime Law* § 5–17 (1999). And as discussed below, punitive damages are available in a survivor action.

■ The Ninth Circuit recognizes a survival action under general maritime law. *See Evich v. Connelly,* 759 F.2d 1432, 1434 (9th Cir.1985); *Sutton,* 26 F.3d at 919. The survivor action is ill-defined. In theory, a survival action recognizes the right of a victim's estate to recover damages for his or her personal injuries *prior* to death. *Sutton,* 26 F.3d at 920. Thus, the decedent's estate is allowed to prosecute a negligence or product liability claim that the decedent had before death. *Id.* Damages available in a survival action may include pre-death pain, suffering and emotional distress, and loss of future wages. *See Evich v. Connelly,* ("*Evich II* ") 819 F.2d 256, 258 (9th Cir.1987); *Sutton, supra.* The Ninth Circuit expressly permits punitive damages in a survival action. *Evich II,* 819 F.2d at 258 (9th Cir.1987). However, the Warsaw Convention bars those damages, and purely emotional distress damages, against Alaska.

A second important consideration is how maritime law applies to the cases that are brought on behalf of the crew members who were employed by Alaska.

When admiralty law applies, deceased employees can recover against Alaska under an applicable state workers' compensation law or under general maritime tort principles. *See Chandris, Inc. v. Latsis,* 515 U.S. 347, 356, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995). Whether the crew members in this case are limited to their workers' compensation remedies against Alaska, or whether they can maintain a maritime action, may depend on which state's workers' compensation laws apply. In *Chan v. Society Expeditions Inc.,* 39 F.3d 1398, 1402 (9th Cir.1994), the Ninth Circuit permitted a Washington state employee to maintain a maritime negligence claim against his employer because that state's law exempted maritime actions from its worker's compensation exclusivity provision. However, in the absence of such an exception, other decisions have barred an employee's maritime claim against his employer based on the applicable state's workers' compensation exclusivity provision. *See Brockington v. Certified,* 903 F.2d 1523, 1533 (11th Cir.1990). This court makes no ruling on those issues at this time.

A third consequence of the application of maritime law is that all of the claims will be subject to one body of law, except as governed by the Warsaw Convention or workmen's compensation. Although that relative uniformity was not the reason for this court's decision, it is a consequence of it. And the parties and the court will generally be spared the task of applying state choice of law rules in an attempt to determine the substantive law of the numerous jurisdictions which had a relationship with these cases.

Finally, this court need not determine precisely where the plane crashed. Since maritime law is to apply, it is not important to know whether or not the crash took place within California's territorial waters. As long as the crash occurred in navigable waters (as it did), and short of the jurisdiction of the Death on the High Seas Act (as the parties concede), the precise location of the crash is not determinative of the law to be applied.

## V.

The above decisions having been made,[4] the court now notes Alaska's statement that it intends to make offers of settlement. The plaintiffs are of course interested in such offers, and the plaintiffs' steering committee has an additional interest because of its management of the plaintiffs' expense fund. The parties are free to make whatever settlements they mutually desire. But any plaintiff who does not settle by August 31, 2001 will be obliged to contribute to the plaintiffs' expense fund.

The parties may also now commence discovery. More specifically, the parties are to reply to one another's written discovery requests, which have heretofore been served, by June 1, 2001. Other written discovery and depositions may now initiated. However the discovery is subject to the following limitations:

(1) There should be no discovery against Alaska on the subject of punitive damages, since this court has held that such damages are barred by the Warsaw Convention.

(2) The discovery should not interfere with the ongoing investigation and technical reviews by the National Transportation Safety Board.

## VI.

This case will be reassigned to another judge of this court because of the retirement of the undersigned on June 30, 2001. The court therefore does not believe that it

---

**4.** Because of the above decisions, plaintiffs' Rule 56(f) motions are denied as moot.

would be appropriate for the undersigned to now schedule the dates for the completion of discovery, final motions, pretrial and trial.

IT IS THEREFORE ORDERED that there will be a status conference before the newly assigned judge on September 7, 2001 at 11:00 a.m., subject to modification by the assigned judge. The status conference will be to advise the court of the progress of the settlement discussions and the progress of discovery, and to set dates for the remainder of the case.

IT IS SO ORDERED.