**Gordon T. CAREY, Jr., Plaintiff–Appellant,**

v.

**UNITED AIRLINES, Defendant–Appellee.**

No. 00–35069.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 9, 2001

Filed July 3, 2001

Gordon Carey, Jr., Pro per, Portland, Oregon, for the plaintiff-appellant.

Douglas G. Pickett, Jonathan M. Hoffman, Martin Bischoff Templeton Langslet & Hoffman LLP, Portland, Oregon, for the defendant-appellee.

Before: T.G. NELSON, GRABER, and RAWLINSON, Circuit Judges.

T.G. NELSON, Circuit Judge:

Appellant Gordon T. Carey ("Carey") filed suit against United Airlines ("the airline") for damages arising out of an incident between him and a flight attendant while flying from Costa Rica to Los Angeles. Carey brought claims of intentional infliction of emotional and mental distress,

negligent infliction of emotional and mental distress, and false imprisonment. Carey appeals the magistrate judge's order granting the airline's motion for summary judgment. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

Carey and his three daughters were flying from Costa Rica to Los Angeles, en route to their home in Portland.[1] During the flight, two of Carey's children began to suffer earaches. One of them left her seat in coach class and came to Carey, who was sitting in first class, seeking medicine for her pain. A flight attendant warned Carey that his children were not permitted to come into the first class cabin. Carey responded by stating that his children were ill, but the flight attendant made some reference to Federal Airline Administration (FAA) regulations.

Another daughter then walked from coach to first class seeking Carey's assistance. The same flight attendant reprimanded Carey again and told him that an FAA representative was on board who could arrest him. Upon hearing this, Carey believed that he had to send his daughter back to coach class even though she was in pain and in tears.

Carey later confronted the alleged FAA representative, who refused to show Carey his identification.[2] A "heated" exchange between Carey and the FAA representative followed; this exchange included insults and profanity. In response to Carey's request that she give him the name of this FAA representative, the flight attendant refused and then proceeded to humiliate Carey in front of the other first-class passengers.

In addition to alleging his emotional and mental distress, Carey alleged that he suffered "physical manifestations including nausea, cramps, perspiration, nervousness, tension, and sleeplessness." Carey sought to recover damages under state law for his emotional and mental distress. However, the magistrate judge concluded that the Warsaw Convention[3] governed Carey's claims, that Carey's allegations of intentional misconduct did not exempt his claims from the Warsaw Convention's application, and that the Warsaw Convention was Carey's exclusive remedy. Because the magistrate judge concluded that Carey's alleged injury did not satisfy the conditions for carrier liability under the Warsaw Convention, the court granted the airline's motion for summary judgment.

On appeal, Carey argues that the Warsaw Convention is not his exclusive remedy. According to Carey, because his claims against the airline arose out of intentional misconduct, they fall outside the scope of the Warsaw Convention. He further argues that, even if the Warsaw Convention is his exclusive remedy, his injury satisfied the conditions for carrier liability under the Warsaw Convention.

---

1. For purposes of its summary judgment motion, the airline did not dispute the allegations as outlined in Carey's complaint and letter to the chairman of the airline's board of directors. Thus, we present only Carey's version of what occurred on that flight from Costa Rica to Los Angeles.

2. According to Carey's letter to the airline, he telephoned the FAA upon his return to Portland. In that conversation, an FAA official disclosed that the man the flight attendant referred to probably was not an FAA agent.

3. Convention for the Unification of Certain Rules Relating to International Transportation by Air, Concluded at Warsaw, Poland, October 12, 1929, adhered to by the United States June 27, 1934, 49 Stat. 3000, 3014, T.S. No. 876, *reprinted in* note following 49 U.S.C. § 40105.

## II. STANDARD OF REVIEW

 We review *de novo* a district court's grant of summary judgment.[4] "We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the substantive law."[5]

## III. ANALYSIS

The Warsaw Convention is a comprehensive international treaty, signed in 1929, governing liability in "all international transportation of persons, baggage, or goods."[6] In signing the Warsaw Convention, "[t]he contracting states in 1929 believed that limitations on liability would promote the development of the fledgling commercial air industry by allowing the airlines to predict their exposure to monetary damages and thereby obtain needed capital and adequate insurance coverage."[7]

Only a few articles of the Warsaw Convention are pertinent in this case. Article 17 of the Warsaw Convention provides that a carrier "shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by the passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking."[8] Articles 22 and 20, respectively, cap a carrier's liability at $75,000 per passenger[9] and preclude all liability if the carrier has taken all necessary or possible measures to avoid the damage.[10] However, Article 25 provides that a carrier "shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability, if the damage is caused by his willful misconduct."[11]

4. *Botosan v. Paul McNally Realty,* 216 F.3d 827, 830 (9th Cir.2000).

5. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.,* 235 F.3d 1184, 1191 (9th Cir.2000).

6. Note following 49 U.S.C. § 40105, Article 1.

7. *In re Korean Air Lines Disaster of Sept. 1, 1983,* 932 F.2d 1475, 1484 (D.C.Cir.1991) (citing *Eastern Airlines, Inc. v. Floyd,* 499 U.S. 530, 544–45, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991)).

8. Note following 49 U.S.C. § 40105.

9. *Id.* The Warsaw Convention originally provided for a lower cap on damages (approximately $8,300 per passenger). However, the Montreal Agreement of 1966, a private agreement among airlines that was approved by the United States Government, *see* 31 Fed. Reg. 7302 (May 13, 1966), raised the cap to $75,000. The Montreal Agreement of 1966, although not a treaty, requires compliance from all signatories when their flight itinerary includes a stop in the United States. *See In re Hijacking of Pan Am. World Airways at Karachi,* 920 F.Supp. 408, 412 (S.D.N.Y.1996).
 In 1996, a trade organization of international carriers took the lead in drafting a series of intercarrier agreements in which the carriers voluntarily waived the damages limitations of Article 22. *See* Blanca I. Rodriguez, *Recent Developments in Aviation Liability Law,* 66 J. Air L. & Com. 21, 35 (2000). By 1998, all United States and most foreign international carriers had signed and implemented these agreements, although the effective date of the agreements is a matter of dispute. *Id.* at 35, 37.

10. Article 20 states that the carrier "shall not be liable if he proves that he and his agents have taken all necessary measures to avoid the damage or that it was impossible for him or them to take such measures." Note following 49 U.S.C. § 40105. The Montreal Agreement of 1966 also required all signatories to waive this exclusion. *See Floyd,* 499 U.S. at 549, 111 S.Ct. 1489.

11. The "willful misconduct" standard was later amended to the formulation "intentionally or recklessly with knowledge that damage would probably result." *See* Rodriguez, *supra* note 9 (discussing Montreal Protocol No. 4 to Amend the Warsaw Convention, *reprinted in* S. Exec. Rep. No. 105–20, at 21–32 (1998)). The United States Senate ratified Montreal Protocol No. 4 in November 1998, and the protocol went into force in the United States

## A. Exclusivity of the Warsaw Convention

■ The magistrate judge held that Carey's claims were governed solely by the Warsaw Convention and that he could not maintain any independent state law claims against the airline. We agree.

In *El Al Israel Airlines, Ltd. v. Tseng,*[12] the plaintiff filed suit to recover damages for emotional and mental distress that she suffered as a result of a detention and body search conducted by the airline before she boarded. The court of appeals held that plaintiff could not recover under the Warsaw Convention because there was no "accident" under Article 17, but concluded that the Warsaw Convention was not Tseng's exclusive remedy.[13] The Supreme Court reversed, holding that the Warsaw Convention precluded a passenger from maintaining an action for damages under local law when the claim arises out of an international flight and it cannot satisfy the Warsaw Convention's conditions for carrier liability.[14]

Although *Tseng* appears to dispose of his state law claims, Carey argues that, because the Warsaw Convention does not apply to claims arising out of intentional misconduct, *Tseng* should not be read to hold that the Warsaw Convention is the exclusive remedy for such claims against an air carrier. To come to a different conclusion, he argues, would deprive plaintiffs who are victims of the most egregious

conduct on international flights of recovery for their injuries. That, according to Carey, could not have been the intent of the drafters of the Warsaw Convention. We reject his argument because it rests on a faulty view of the Warsaw Convention's liability scheme.

Carey's argument assumes that the term "accident" in Article 17 is defined by its everyday meaning-something caused by carelessness, but not caused on purpose. However, an "accident," as that term is defined for purposes of the Warsaw Convention, can include intentional misconduct. In *Air France v. Saks,*[15] the Supreme Court defined the term "accident" as including any "unexpected or unusual event or happening that is external to the passenger."[16] Nothing in this definition suggests that an "accident" encompasses only negligent or reckless conduct, as opposed to intentional misconduct; in fact, there is no mention of the carrier's motive or mental state whatsoever. Moreover, the *Saks* Court cautioned that its definition "should be flexibly applied."[17]

We are further convinced that intentional misconduct can be an "accident" under Article 17 by a subsequent warning issued by the Supreme Court in *Tseng*. Tseng argued to the Court, just as Carey does to us, that air carriers will escape liability for their intentional torts if passengers are not permitted to pursue personal injury claims outside the terms of the Warsaw Convention.[18] Tseng's argument to the Court was

---

on March 4, 1999. *Id.* at 36. In any event, our decision today applies to either version of Article 25.

12. 525 U.S. 155, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999).

13. *Tseng v. El Al Israel Airlines, Ltd.,* 122 F.3d 99, 107–08 (2d Cir.1997).

14. *Tseng,* 525 U.S. at 176, 119 S.Ct. 662.

15. 470 U.S. 392, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985).

16. *Id.* at 405, 105 S.Ct. 1338. The Court excluded from its definition of "accident" incidents where the injury "results from the passenger's own internal reaction to the usual, normal, and expected operation of aircraft." *Id.* at 406, 105 S.Ct. 1338.

17. *Id.* at 405, 105 S.Ct. 1338.

18. *Tseng,* 525 U.S. at 172, 119 S.Ct. 662.

premised on the same argument that she had advanced before the Second Circuit-that "willful misconduct" cannot be an "accident." [19] In direct response to Tseng's concern, the Supreme Court "cautioned" that the definition of "accident" is an " 'unusual event ... *external to the passenger* ' " and that it " 'should be flexibly applied.' " [20] However, Tseng chose not to challenge the Second Circuit's conclusion that no "accident" had occurred,[21] and the Court also determined that Tseng had waived any challenge to the district court's finding on the absence of "willful misconduct" in her case.[22] For these reasons, the Court's response is dictum. Nonetheless, the Court's response indicates that a carrier's intentional misconduct can fall under the definition of "accident," provided that the conduct otherwise meets the standard laid out in *Saks*.

A deeper look into the rationale behind *Tseng* supports the conclusion that the Warsaw Convention applies to claims arising out of intentional misconduct. If Carey's view of the Warsaw Convention were correct, then international air carriers would face two sources of liability-the Warsaw Convention and local law-depending on the nature of their actions. But that is precisely the scenario that the *Tseng* Court rejected. "The cardinal purpose of the Warsaw Convention ... is to achieve uniformity of rules governing claims arising from international air transportation." [23] Given that purpose, the Court stated that it "would be hard put to conclude that the delegates at Warsaw meant to subject air carriers to the distinct, nonuniform liability rules of the individual signatory nations." [24]

Moreover, contrary to what Carey argues, nothing in Article 25 suggests that the Warsaw Convention does not apply to claims arising out of intentional misconduct. Article 25 states that "[t]he carrier shall not be entitled to avail himself *of the provisions·of this convention which exclude or limit his liability*, if the damage is caused by his willful misconduct."[25] It does not state that the *entire* Warsaw Convention is inapplicable to damage caused by "willful misconduct."

Subsequent conduct by the contracting parties to the Warsaw Convention provides further confirmation that a finding of "willful misconduct" under Article 25 was not intended to remove the plaintiff from the ambit of the Convention. The Hague Protocol of 1955 and the Montreal Protocol No. 4 of 1975, which were significant amendments to the Warsaw Convention,[26] accomplished two things: increased the

---

**19.** The Second Circuit rejected the argument that "willful misconduct" cannot be an "accident." *Tseng*, 122 F.3d at 104 ("Article 25 simply describes a subset of 'accidents' that are more egregious and to which a greater degree of culpability attaches."). In his briefs, Carey uses the term "intentional misconduct." However, the terms "intentional misconduct" and "willful misconduct" can be used interchangeably.

**20.** *Tseng*, 525 U.S. at 172, 119 S.Ct. 662 (emphasis in original) (quoting *Saks*, 470 U.S. at 405, 105 S.Ct. 1338).

**21.** *Id.* Tseng correctly assumed that˙she was also unable to satisfy the "bodily injury" requirement in Article 17.

**22.** *Id.* at 167 n. 10, 119 S.Ct. 662. According to the Court, the Second Circuit left the district court's finding undisturbed. *Id.*

**23.** *Id.* at 169, 119 S.Ct. 662 (internal quotation marks and citation omitted).

**24.** *Id.*

**25.** Note following 49 U.S.C. § 40105 (emphasis added).

**26.** The United States Senate finally ratified these amendments in 1998.

limit of liability under Article 22 (doubling the original amount) and narrowed the conditions that establish "willful misconduct."[27] Several courts have concluded that these protocols merely "clarified Article 25 to make it explicit that the limits on liability lifted in the event of willful misconduct are *only* the monetary limits contained in Article 22."[28] There is no indication that these protocols were meant to remove a plaintiff's claim from the ambit of the Warsaw Convention altogether if "willful misconduct" is shown.

Likewise, three of our sister circuits have held that a finding of "willful misconduct" under Article 25 does not authorize an award of punitive damages under the Warsaw Convention. In doing so, each emphasized that, notwithstanding Article 25's removal of the limitations and exclusions on a carrier's liability, "the rest of the Convention still governs the action," including Articles 17 and 24, which they determined barred non-compensatory awards.[29] Finally, courts have consistently understood that claims against international air carriers that allege "willful misconduct" can be brought under the Warsaw Convention, noting that the carrier's "willful misconduct" lifts Article 22's cap on damages.[30]

Despite this weight of authority against him, Carey points to the following statement by the *Tseng* Court: "We ... accept ... that El Al's actions did not constitute 'willful misconduct' ... [and thus] we confront no issue under Article 25 of the Convention."[31] According to Carey, this statement indicates that *Tseng* did not address intentional misconduct and, as a result, should have no impact on his state

---

**27.** Andreas F. Lowenfeld & Allan I. Mendelsohn, *The United States and the Warsaw Convention*, 80 Harv. L.Rev. 497, 505 (1967); *see also In re Korean Air Lines*, 932 F.2d at 1489 (discussing the narrowing of conditions that establish "willful misconduct"); *Floyd v. Eastern Airlines, Inc.*, 872 F.2d 1462, 1483 (11th Cir.1989) (discussing the increased limit on liability), *rev'd on other grounds*, 499 U.S. 530, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991).

**28.** *In re Korean Air Lines*, 932 F.2d at 1489 (emphasis added); *see also Floyd*, 872 F.2d at 1483 ("[M]inutes of the negotiations on the Hague Protocol ... indicate that the delegates understood article 25 as referring only to article 22 ....") (internal quotation marks and citation omitted).

**29.** *In re Korean Air Lines*, 932 F.2d at 1488–89 ("It is settled that willful misconduct negates the due care exclusion from liability contained in Article 20 and the monetary limitations contained in Article 22.... [However,] certain key articles in the Convention continue to apply in cases of willful misconduct, and no authority suggests that the basic liability terms of Article 17 ... were to be displaced."); *In re Air Disaster at Lockerbie, Scotland*, 928 F.2d 1267, 1286 (2d Cir.1991) (overruled on other grounds by *Zicherman v. Korean Air Lines Co.*, 516 U.S. 217, 116 S.Ct. 629, 133 L.Ed.2d 596 (1996), as recognized in *Brink's Limited v. South African Airways*, 93 F.3d 1022, 1029 (2d Cir.1996)); *Floyd*, 872 F.2d at 1483 ("Article 25 ... was not intended to provide an independent right of action [contemplating punitive damages.]").

**30.** *See, e.g., Zicherman*, 516 U.S. at 219, 116 S.Ct. 629 (discussing that the D.C. Circuit, in *In re Korean Air Lines*, 932 F.2d 1475, upheld a jury finding that the destruction of Flight KE007 was proximately caused by "willful misconduct" of the crew, "thus lifting the ... $75,000 cap on damages"); *Koirala v. Thai Airways Int'l, Ltd.*, 126 F.3d 1205, 1209 (9th Cir.1997); *In re Air Crash Disaster*, 86 F.3d 498, 544 (6th Cir.1996); *Air Disaster at Lockerbie Scotland on December 21, 1988*, 37 F.3d 804, 812 (2d Cir.1994) (overruled on other grounds by *Zicherman*, 516 U.S. 217, 116 S.Ct. 629, 133 L.Ed.2d 596, as recognized in *Brink's Limited*, 93 F.3d at 1029); *Butler v. Aeromexico*, 774 F.2d 429, 430 (11th Cir. 1985) (superseded by statute on other grounds as stated in *Cortes v. American Airlines, Inc.*, 177 F.3d 1272, 1290 (11th Cir. 1999)).

**31.** *Tseng*, 525 U.S. at 166, 119 S.Ct. 662.

law claims. That argument is unpersuasive.

The *Tseng* Court framed the issue before it as whether the Warsaw Convention "provides the exclusive cause of action for injuries sustained during international air transportation." [32] At the outset, the Court stated that "[w]e therefore hold that recovery for a personal injury suffered on board [an] aircraft or in the course of any of the operations of embarking or disembarking, if not allowed under the Convention, is not available at all." [33] That holding is all-encompassing-there is no exception for an injury suffered as a result of intentional misconduct.

Moreover, the Court also stated, immediately before this statement regarding "willful misconduct," that "[w]e accept it as given that El Al's search of Tseng was not an 'accident' within the meaning of Article 17." [34] The combined effect of these statements emphasizes the fact that the parties did not dispute that the Warsaw Convention's conditions for liability were not met. In other words, had Tseng asserted on appeal that there was "willful misconduct," the Court's dictum indicates that it may have concluded that such conduct was an "accident" under Article 17 and that therefore the Warsaw Convention's conditions for liability were met. This would have eroded the factual premise for its holding.

Based on the Supreme Court's interpretation of the term "accident" in Article 17 and the history of Article 25, including cases interpreting its provisions, we see no basis for concluding that the Warsaw Convention does not apply to claims arising out of intentional misconduct. Because the Warsaw Convention does apply to such

claims, Carey has a remedy. Under *Tseng*, it is his only one. Thus, the district court was correct to conclude that Carey was required to satisfy the Warsaw Convention's conditions in order to recover for his alleged injuries.

### B. *Liability Under the Warsaw Convention*

■ Carey argues that the district court erred in finding that he did not satisfy the "bodily injury" requirement in Article 17 of the Warsaw Convention. Although he has not alleged that he suffered a "bodily injury" during the incident with the airline's flight attendant, Carey claims that the physical manifestations of his emotional and mental distress satisfy the "bodily injury" requirement, thus qualifying him for recovery. We conclude that physical manifestations of emotional and mental distress do not satisfy the "bodily injury" requirement in Article 17.

In *Eastern Airlines, Inc. v. Floyd*,[35] the Supreme Court held that Article 17 of the Warsaw Convention did not allow recovery for mental injury that is unaccompanied by physical injury.[36] In *Floyd*, all three engines of an airplane had failed shortly after takeoff, at which point the crew notified the passengers that they would ditch the plane in the ocean. Fortunately, the crew managed to restart an engine and land safely.

However, unlike the plaintiffs in *Floyd*, Carey claims that he also suffered physical manifestations of his emotional and mental distress, including nausea, cramps, perspiration, nervousness, tension, and sleeplessness. Carey is correct that *Floyd* left

---

32. *Id.* at 162, 119 S.Ct. 662 (internal quotation marks and citation omitted).

33. *Id.* at 161, 119 S.Ct. 662 (internal quotation marks and citation omitted).

34. *Id.* at 166, 119 S.Ct. 662.

35. 499 U.S. 530, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991).

36. *Id.* at 534, 552, 111 S.Ct. 1489.

open the question of whether such physical manifestations satisfy the "bodily injury" requirement in Article 17. However, we are persuaded, in accordance with the Third Circuit's decision in *Terrafranca v. Virgin Atlantic Airways Ltd.*,[37] that they do not.

In *Terrafranca*, the plaintiff sought recovery for her extreme emotional distress, in the form of posttraumatic stress disorder, over a bomb scare incident. She alleged that her condition was complicated by anorexia, that she had lost seventeen pounds, and that these physical manifestations of her emotional injury were sufficient to be considered a "bodily injury" under *Floyd*.[38] The Third Circuit concluded, based on the *Floyd* Court's careful examination of the French term *"lesion corporelle,"* which translates into "bodily injury,"[39] the intent of the signatory nations, and the Warsaw Convention's legislative history, that there was no support for the argument that the plaintiff's physical manifestations of her emotional injury satisfied the "bodily injury" requirement.[40] Because the plaintiff could not "demonstrate direct, concrete, bodily injury as opposed to mere manifestation of fear or anxiety," the court held that she did not

satisfy the conditions for liability under Article 17 and thus could not recover for her emotional distress.[41]

■ For reasons similar to those articulated by the Third Circuit in *Terrafranca*, we hold that physical manifestations of emotional and mental distress do not satisfy the "bodily injury" requirement in Article 17.[42] Most importantly, we would undermine *Floyd* if we concluded that the drafters of the Warsaw Convention did intend to compensate passengers who merely suffered physical manifestations of their emotional and mental distress, because plaintiffs would then be able to skirt *Floyd*'s bar on recovery for "purely mental injuries"[43] simply by alleging that they suffered some physical manifestations of those injuries, no matter how slight or remote. As a practical matter, *Floyd* "would thus be converted into an easily satisfied pleading formality, and a back door would be impermissibly opened to recovery for purely psychological injuries"[44] so long as plaintiff could allege nausea and the like.

Moreover, the *Floyd* Court "took pains to attach a relatively narrow meaning to ['bodily injury'] in order to respect the

---

37. 151 F.3d 108 (3d Cir.1998).

38. *Id.* at 110.

39. The Warsaw Convention was written in French and translated into English before senate ratification in 1934.

40. *Id.* at 110–11.

41. *Id.* at 111.

42. Significantly, Carey does not even cite *Terrafranca* or make any effort to convince us that it was wrongly decided. Further, at least two other courts have ruled consistently with *Terrafranca*. *Turturro v. Continental Airlines*, 128 F.Supp.2d 170, 178 (S.D.N.Y.2001) ("To the extent that plaintiff ... did not receive any physical wounds, impacts, or deprivations, or any alteration in the structure of an internal organ, then any subsequent shortness of breath, sleeplessness, or inability to concentrate may safely be characterized as psychosomatic and is not compensable."); *Hermano v. United Airlines*, No. C 99–105 SI, 1999 WL 1269187, at *4 (N.D.Cal. Dec.21, 1999) (dismissing complaint alleging headaches, panic attacks, and palpitations stemming from emotional distress); *cf. Alvarez v. American Airlines, Inc.*, No. 98 Civ. 1027, 1999 WL 691922 (S.D.N.Y. Sept.7, 1999) (although a Warsaw Convention plaintiff may recover compensation for psychological injuries caused by her physical injury, psychological injuries that are merely accompanied by physical injuries are not compensable).

43. *Floyd*, 499 U.S. at 534, 111 S.Ct. 1489.

44. *Alvarez*, 1999 WL 691922, at *4.

'primary purpose of the contracting parties to the Convention [in 1929]: limiting the liability of air carriers in order to foster the growth of the fledgling commercial aviation industry.' "[45] Our decision today must respect the purpose behind the Warsaw Convention as well, and there is simply no justification for expanding the meaning of "bodily injury," and consequently an airline's liability, to include physical manifestations of emotional and mental distress. In fact, such manifestations are more like the mental injuries alleged in *Floyd* than like bodily injuries stemming from the "accident" itself. We conclude that barring plaintiffs like Carey from recovery is in keeping with the purpose behind the Warsaw Convention. "Whatever may be the current view among Convention signatories, in 1929 the parties were more concerned with protecting air carriers and fostering a new industry than providing full recovery to injured passengers, and we read ['bodily injury'] in a way that respects that legislative choice."[46] To the extent that such plaintiffs are left without a remedy, no matter how egregious the airline's conduct, that is a result of the deal struck among the signatories to the Warsaw Convention.[47] Consequently, Carey can take nothing by way of the Warsaw Convention.[48]

Strong dictum in *Tseng* provides further support for our holding. In *Tseng,* the parties did not challenge the lower court's finding that an "accident" had not occurred.[49] However, the Court stated that, even if El Al's search of Tseng was an "accident," the core issue of exclusivity would remain because Tseng could not meet the "bodily injury" requirement under Article 17.[50] In doing so, the Court noted that Tseng could not recover under Article 17 "for solely psychic or psychosomatic injuries."[51] We read this passage as a strong indication that the Supreme Court would hold that physical manifestations purely descended from emotional and mental distress do not satisfy the "bodily injury" requirement in Article 17.

**45.** *Turturro,* 128 F.Supp.2d at 177 (quoting *Floyd,* 499 U.S. at 546, 111 S.Ct. 1489).

**46.** *Floyd,* 499 U.S. at 546, 111 S.Ct. 1489.

**47.** We note that *Weaver v. Delta Airlines, Inc.,* 56 F.Supp.2d 1190 (D.Mont.1999), held that posttraumatic stress disorder is a "bodily injury" for purposes of the Warsaw Convention. The plaintiff there had experienced biochemical reactions as a result of her terror that had physical impacts upon her brain. Although that case has no effect here because Carey alleges no such injury, it leaves open the possibility that there could be recovery for egregious incidents of intentional misconduct where there is no concrete or visible "bodily injury," like Carey's hypothetical of a flight attendant who puts an unloaded gun to a passenger's head and pulls the trigger. In any event, we make no determination as to whether such a physical injury should satisfy the "bodily injury" requirement in Article 17.

**48.** Because we conclude that Carey is unable to satisfy the "bodily injury" requirement in Article 17, we do not reach the issue of whether the airline's conduct in this case constituted an "accident," another predicate to liability under Article 17.

**49.** 525 U.S. at 166, 119 S.Ct. 662.

**50.** *Id.* at 166 n. 9, 119 S.Ct. 662.

**51.** *Id.* at 172, 119 S.Ct. 662. Psychosomatic is defined as "[o]f or relating to phenomena that are both physiological and psychological" and as "one who experiences bodily symptoms because of mental conflict." Webster's II New Riverside University Dictionary 950 (1994).

Tseng had alleged that she suffered severe emotional distress and required treatment for headaches, upset stomach, ringing in her ears, nervousness, and sleeplessness. 919 F.Supp. 155, 157 (S.D.N.Y.1996); *see also* 525 U.S. at 160, 119 S.Ct. 662 ("Tseng alleges psychic or psychosomatic injuries, but no 'bodily injury' as that term is used in the Convention.").

*In re Aircrash Disaster Near Roselawn, Indiana on October 31, 1994,*[52] is not to the contrary. In that case, the plaintiffs sought compensation for the pre-impact terror of their family members who were killed in the crash. The issue before the court was whether a passenger could recover for mental injuries that are accompanied by physical injuries from the "accident," but that do not flow from those physical injuries. Although the court held that the plaintiffs could recover for the pre-impact terror,[53] that has no effect here. Carey suffered no physical injury from the "accident" itself; his only allegations of physical injury are the physical manifestations of his emotional and mental distress, which presents an entirely different issue than that before the *Roselawn* court.[54]

## IV. CONCLUSION

Under *Tseng,* the Warsaw Convention is the exclusive remedy for Carey's claims arising out of the airline's alleged intentional misconduct. However, the physical manifestations of his emotional and mental distress do not satisfy the "bodily injury" requirement in Article 17 of the Warsaw Convention. Because he cannot recover under the Warsaw Convention, the district court's grant of summary judgment for the airline was proper.

AFFIRMED.

---

52. 954 F.Supp. 175 (N.D.Ill.1997).

53. *Id.* at 179.

54. For the same reason, *Jack v. Trans World Airlines, Inc.,* a decision from the Northern District of California, has no effect on this case. *See* 854 F.Supp. 654 (1994) (plaintiffs cannot recover damages for their emotional distress that led to physical manifestations; they can recover only for emotional distress when it results from impact injuries or from physical manifestations of that original distress caused by the impact injuries).