Debra MILLER and Michael
Dobler, Plaintiffs,

v.

CONTINENTAL AIRLINES, INC, a
Corporation, and Air France, a
French Corporation, and the Boeing
Company, Defendants.

Daniel WYLIE, Plaintiff,

v.

American Airlines, Inc, and The Boeing
Company, Defendants.

No. C–02–1693 VRW, C–02–29979 VRW.

United States District Court,
N.D. California.

March 28, 2003.

Frank C. Liuzzi, O'Reilly Collins & Danko, San Mateo, CA, for Plaintiffs.

Kymberly E. Speer, Livingston Law Firm, Walnut Creek, CA, Chung H. Han, Perkins Coie LLP, Santa Monica, CA, for Defendants.

## ORDER

WALKER, District Judge.

In the above captioned cases, plaintiffs bring personal injury claims against three airlines and an airplane manufacturer for damages arising from deep vein thrombosis (DVT) caused by defendants' seating configuration on international flights.

Presently before the court are the airline defendants' motions to dismiss plaintiffs' complaints with prejudice (02–1693: Doc # 11; 02–2997: Doc # 8). With the exception of the spousal claims in *Miller*, the claims raised by each of the passenger plaintiffs are identical and based on identical material allegations, a circumstance likely resulting from the prosecution of both cases by the same counsel. The amended complaints at issue in the pending motions were even filed within a day of each other. As a result, the court finds it appropriate to consider and address within this single order the legal sufficiency of claims against the airline defendants in both the third amended complaint in *Miller et al v. Continental Airlines et al*, Case No 02–1693–VRW, and the second amended complaint in *Wylie v. American Airlines Inc et al*, Case No 02–2993–VRW. For the reasons set forth below, the court GRANTS in part and DENIES in part defendants' motions (02–1693: Doc # 11; 02–2997: Doc # 8).

### I

The following factual summary comes from plaintiffs' amended complaints. See *Miller* TAC (02–1693: Doc # 10); *Wylie* SAC (02–2997: Doc # 7). On or about April 12, 2001, plaintiff Debra Miller traveled as a paying passenger on board a flight operated by Continental Airlines and Air France from Paris, France, to San Francisco, California, with a stop-over in Newark, New Jersey. See *Miller* TAC (02–1693: Doc # 10), ¶¶ 9,10. Similarly, on July 4, 2001, plaintiff Daniel Wylie traveled as a paying passenger on board a direct flight from Paris, France, to San Francisco, California, operated by defen-

dant American Airlines. See *Wylie* SAC (02–2997: Doc # 7), ¶¶ 7–10.

As a result of defendants' seating configuration, both passengers, either during or after the flight, developed DVT, which is a medical term used to describe the formation of a blood clot in a major vein. See *Miller* TAC (02–1693: Doc # 10), ¶ 12; *Wylie* SAC (02–2997: Doc # 7), ¶ 10. In both cases, defendants knew or should have known "that the aircraft was equipped with a seating configuration and seats (for which [plaintiffs] purchased [tickets] and to which [they were] subjected for the duration of the flight) could and would cause deep vein thrombosis." *Miller* TAC (02–1693: Doc # 10), ¶ 12; *Wylie* SAC (02–2997: Doc # 7), ¶ 10. The airline defendants are alleged to have "so negligently transported" plaintiffs, and defendant Boeing Company is alleged to have "so negligently designed, constructed and equipped the aircraft's seating", as to have caused the injuries at issue. See *id.*

Miller and Wylie each allege the same five claims for relief, using substantively identical language:

(1) a claim for damages under the Warsaw Convention captioned, which is captioned as "treaty liability" (*Miller* TAC (02–1693: Doc # 10), ¶¶ 14–15; *Wylie* SAC (02–2997: Doc # 7), ¶¶ 11–12);

(2) negligence on the part of all defendants (*Miller* TAC (02–1693: Doc # 10), ¶¶ 16–19; *Wylie* SAC (02–2997: Doc # 7), ¶¶ 13–14);

(3) common carrier negligence against the airline defendants (*Miller* TAC (02–1693: Doc # 10), ¶¶ 15–16; *Wylie* SAC (02–2997: Doc # 7), ¶¶ 20–21);

(4) product liability against all defendants (*Miller* TAC (02–1693: Doc # 10), ¶¶ 24–29; *Wylie* SAC (02–2997: Doc # 7), ¶¶ 17–22); and

(5) breach of warranty also against all defendants (*Miller* TAC (02–1693: Doc

# 10), ¶¶ 30–31; *Wylie* SAC (02–2997: Doc # 7), ¶¶ 23–24).

In addition, Miller and Wylie also seek punitive damages. *Miller* TAC (02–1693: Doc # 10), ¶¶ 33–35; *Wylie* SAC (02–2997: Doc # 7), ¶¶ 25–27.

In addition, in one of the cases, *Miller et al v. Continental et al,* Case No 02–1693–VRW, plaintiff Michael Dobler, the spouse of a passenger, also asserts claims for negligent infliction of emotional distress and loss of consortium. *Miller* TAC (02–1693: Doc # 10), ¶¶ 22–23, 32.

This court has jurisdiction pursuant to 28 USC § 1331 as this case arises under a treaty of the United States, namely the Warsaw Convention. See *Benjamins v. British European Airways,* 572 F.2d 913, 916–18 (2d Cir.1978), *cert denied,* 439 U.S. 1114, 99 S.Ct. 1016, 59 L.Ed.2d 72 (1979). In addition, there is complete diversity between plaintiffs and defendants and an amount in controversy exceeding $75,000 in both actions. Thus, this court also possesses subject matter jurisdiction pursuant to 28 USC § 1332.

II

Under FRCP 12(b)(6), dismissal is proper only when it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). All material allegations in the complaint must be taken as true and construed in the light most favorable to the plaintiff. See *In re Silicon Graphics Inc. Sec. Lit.,* 183 F.3d 970, 980 n. 10 (9th Cir1999).

The parties agree that this case is controlled by the treaty commonly referred to as Warsaw Convention (hereinafter, the Convention), which is formally known as the Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct 12, 1929, 49 Stat

3000, 3014, TS No 876 (1934), *reprinted at* note following 49 USC § 40105. See *Miller* TAC (02–1693: Doc # 10), ¶ 4 (alleging that "this is a civil action arising under a treaty of the United States, namely the Warsaw Convention"); *Wylie* SAC (02–2997: Doc # 7) (same allegation), ¶ 4; Defs Mem (02–1693: Doc # 11), at 6; Def Mem (02–2997: Doc # 8), at 4.

"The Warsaw Convention is an international treaty governing the liability of air carriers engaging in international air travel." *Wayne v. DHL Worldwide Express*, 294 F.3d 1179, 1185 (9th Cir.2002) (quoting *Read–Rite v. Burlington Air Express, Ltd.*, 186 F.3d 1190, 1194 (9th Cir.1999)). It provides the exclusive remedy for conduct falling within its provisions. *El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 161, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999).

Article 17 of the Convention addresses claims for personal injury and provides a cause of action against an air carrier, which:

> shall be liable for damage sustained in the event of death or wounding of a passenger or any other bodily injury suffered by the passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

49 Stat 3018; *Tseng*, 525 U.S. at 162–63, 119 S.Ct. 662. An air carrier may be liable for passenger injury under Article 17 "only when three conditions are satisfied: (1) there has been an accident, in which (2) the passenger suffered 'mort,' 'blessure,' 'ou * * * toute autre lésion corporelle' [death, wounding or other bodily injury], and (3) the accident took place on board the aircraft or in the course of operations of embarking or disembarking." *Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530, 535–36, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991).

An "accident" under the Convention has been defined by the Supreme Court as "an unexpected or unusual event or happening that is external to the passenger." *Air France v. Saks*, 470 U.S. 392, 405, 105 S.Ct. 1338, 84 L.Ed.2d 289 (1985). This definition is to "be flexibly applied after assessment of all the circumstances surrounding a passenger's injuries." *Tseng*, 525 U.S. at 166 n. 9, 119 S.Ct. 662; *Saks*, 470 U.S. at 405, 105 S.Ct. 1338.

> In cases where there is contradictory evidence, it is for the trier of fact to decide whether an 'accident' as here defined caused the passenger's injury. But when the injury indisputably results from the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft, it has not been caused by an accident, and Article 17 of the Warsaw Convention cannot apply.

*Saks*, 470 U.S. at 405–06, 105 S.Ct. 1338.

Underscoring the fact-intensive and particularized nature of the inquiry, in *Tseng*, 525 U.S. at 166 n. 9, 119 S.Ct. 662, the Supreme Court called into question the Second Circuit's application of the definition of the term "accident". In that case, the Second Circuit had concluded that "a routine [security] search, applied erroneously to plaintiff in the course of embarking on the aircraft" may not be fairly characterized as an "accident" because such security searches, including the risk of mistakenly searching an innocent passenger, are "routine operating procedures" known by passengers. *Id.* In its opinion, however, the Supreme Court stated it was "questionable whether the Court of Appeals 'flexibly applied' the definition of 'accident' [it] set forth in *Saks*." *Id.*

With these principles in mind, the court turns to each of plaintiffs' claims.

## A

### 1

In their submissions, the parties discuss at length the flurry of recent litigation of DVT injury claims under the Warsaw Convention and whether treaty liability attaches for allegedly defective seating configurations. Under what circumstances, if ever, certain seating configurations or the failure to warn of DVT risks may constitute an "accident" under the Warsaw Convention is clearly a contentious issue that courts in the United States and abroad have only begun to consider and address.

■ The court, however, need not reach these issues at the present time because the court finds that plaintiffs' first claim, for treaty liability, fails to state a claim upon which relief may be granted because the allegations thereunder are couched in wholly conclusory terms.

In their treaty liability claim, plaintiffs allege:

The injury to plaintiff was the result of defendants' willful misconduct or, alternatively, an accident which [airline defendants] did not take all necessary measures to avoid.

*Miller* TAC (02–1693: Doc # 10), ¶ 15; *Wylie* SAC (02–2997: Doc # 7), ¶ 12. This allegation is insufficient because plaintiffs fail to plead the specific conduct they allege to be the "accident" underlying their claims. None of the previous allegations incorporated by reference provide sufficient factual basis to rescue this claim. Plaintiffs simply have not specified any facts to support a finding that their injuries resulted from "an unexpected or unusual event" not caused by "the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft." At most, plaintiffs make only passing, and again conclusory, reference to defendants' negligent design, construction and transportation. *Miller* TAC (02–1693:

Doc # 10), ¶ 12; *Wylie* SAC (02–2997: Doc # 7), ¶ 10.

Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). But the allegation that plaintiffs' injuries resulted from an "accident" is exactly that.

Although the federal procedural standards for notice pleading contained in the Federal Rules of Civil Procedure are liberal, they are not so liberal as to allow purely conclusory statements to suffice to state a claim that can survive a motion to dismiss under FRCP 12(b)(6). "[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754–55 (9th Cir.1994). It is apparent that in plaintiffs' treaty liability claims, they have done little more than cut and paste the legal standard recited the treaty into their complaints.

In their oppositions to the instant motions, plaintiffs posit, for the first time, additional factual scenarios that they contend may suffice to constitute an "accident." This merely underscores the unacceptably vague and conclusory nature of their amended complaints. For example, in their opposition, plaintiffs argue that "defendants' failure to warn * * * of DVT dangers is itself an 'accident' under Article 17." *Miller* Pls Opp (02–1693: Doc # 17), at 16; *Wylie* Pl Opp (02–2997: Doc # 15), at 17. But, aside from passing reference to this theory in their product liability causes of action (denominated later in their complaints and which are not incorporated under their treaty liability claims), the pleadings lack any allegations concerning the existence and nature of this duty, de-

fendants' failure to fulfill such a duty, or how this failure qualifies as an "accident".

Plaintiffs' reliance on Judge Kent's orders in *Blansett v. Continental Airlines,* Case No Civ A G–02–061 (SD Tex), is misplaced. There, the plaintiffs supplied sufficient factual allegations to support their claims, including the airline defendants' numerous failures to (1) warn or advise the passenger of the likelihood of developing DVT; (2) allow an on-board physician to examine or treat the passenger after he became visibly ill; (3) consult with any third-party medical advice service regarding the passenger's condition; (4) relay critical information to the ambulance and hospital personnel that eventually treated the passenger once the plane landed. See *Blansett,* 204 F.Supp.2d 999, 1000 (S.D.Tex.2002) (summarized in *Blansett,* 246 F.Supp.2d 596 (S.D.Tex.2002)). In the cases at bar, plaintiffs fail to state a claim that their injuries resulted from an accident within the meaning of the Convention.

Additionally, the court notes that although plaintiffs predicate treaty liability primarily on defendants' willful misconduct and only secondarily on the presence of an accident, the critical inquiry is whether an accident has occurred. See *Saks,* 470 U.S. at 394, 105 S.Ct. 1338; *Tseng,* 525 U.S. at 161, 119 S.Ct. 662. Plaintiffs cannot recover under the treaty for claims falling within its scope unless they arise out of an accident as defined by the treaty. See *Carey v. United Airlines,* 255 F.3d 1044, 1051 (9th Cir.2001) (reciting standard for an "accident" and noting "there is no exception for an injury suffered as a result of intentional misconduct"). But cf *Id.* (explaining that presence of willful misconduct may give rise to an inference of an accident).

2

■ The court, however, declines to dismiss plaintiffs' claims under the Conven-

tion with prejudice. If a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv–Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir.1986).

Because the amended complaints are devoid of factual allegations concerning the circumstances of the "accident" giving rise to plaintiffs' injuries, the court cannot conclude that they will be unable to amend the complaint with additional and consistent facts to supply a ground for relief. A motion to dismiss is directed at and limited to the confines of the pleadings. Plaintiffs should be given an opportunity to supply specific factual allegations of unusual flight events that can be fairly characterized as an "accident" under the Warsaw Convention.

Defendants argue that granting leave to amend would be futile because development of DVT as a result of sitting on international flights cannot arise from an "accident" under Article 17 of the Convention. See Defs Mem (02–1693: Doc # 11), at 10. But as earlier recited, the Supreme Court has explained that whether a passenger's injury is caused by an "accident" within the meaning of the Convention is a fact-intensive inquiry that "should be flexibly applied after assessment of all the circumstances surrounding a passenger's injuries." *Saks,* 470 U.S. at 405, 105 S.Ct. 1338. Whether an "accident" is the source of plaintiffs' injuries is a question that cannot be answered until plaintiffs supply the factual bases for their claims. The court therefore declines defendants' invitation to dismiss plaintiffs' claims with prejudice without first affording an opportunity to allege the occurrences which constitute an "accident" under the Convention and

thereby provide the court a clearer picture of plaintiffs' claims.

Plaintiffs are accordingly GRANTED leave to amend their complaints in accordance with this order. Plaintiffs in both cases may serve and file further amended complaints on or before April 25, 2003. The court notes, however, that plaintiffs will not be able to meet their pleading obligations merely by inserting an allegation that the "accident" was "unexpected or unusual", as they have offered in their opposition. See Pl Opp (02–1693: Doc #17), at 9 ("Plaintiffs will be glad to amend their Complaint to state redundantly that the accident was unexpected or unusual."). As earlier explained, these allegations without their underlying factual basis are conclusory and insufficient to survive a motion to dismiss.

**B**

■ Miller's and Wylie's state law claims, asserted separately from their claims under the Convention, arise from tortious conduct occurring on board the airplane during the flights in question. These claims clearly fall within the scope of the Convention and are therefore preempted.

"The cardinal purpose of the Warsaw Convention * * * is to 'achiev[e] uniformity of rules governing claims arising from international transportation' * * *." *Tseng*, 525 U.S. at 169, 119 S.Ct. 662. But it is now settled that "the Convention's preemptive effect is clear: The treaty precludes passengers from bringing actions under local law when they cannot establish air carrier liability under the treaty." *Tseng*, 525 U.S. at 174–75, 119 S.Ct. 662.

The Convention has preemptive force over local claims even if the Convention itself does not provide an avenue for relief. *Id.* at 161, 119 S.Ct. 662 (holding that "recovery for a personal injury suffered 'on board [an] aircraft or in the course of

any of the operations of embarking and disembarking', if not allowed under the Convention, is not available at all"). Hence, regardless whether Miller and Wylie are able to sustain their claims under Article 17 of the Convention, their state law claims are nonetheless barred because they are based on events occurring during international air transportation, as defined by the treaty.

For example, their claims for negligence are based on the airline defendants' breach of a duty of care to ensure their safety "by subjecting [them] to seats and a seating configuration and conditions in economy class that defendants knew, or * * * should have known, could and would cause deep vein thrombosis." *Miller* TAC (02–1693: Doc #10), ¶18; *Wylie* SAC (02–2997: Doc #7), ¶14. Plaintiffs' common carrier negligence claims are likewise predicated on having been subjected to this seating configuration. *Miller* TAC (02–1693: Doc #10), ¶20; *Wylie* SAC (02–2997: Doc #7), ¶15. These claims are plainly within the Convention's preemptive scope.

■ In their papers, plaintiffs do not oppose dismissal of their claims for negligence or common carrier liability. Instead, they argue that their product liability claims may survive because airline defendants' role in those claims was not based on their acts as air carriers. Plaintiffs contend that the airline defendants' role in designing and outfitting their aircraft falls outside the scope of the Convention. Although plaintiffs' amended complaints each state only one claim captioned "product liability," *Miller* TAC (02–1693: Doc #10, ¶¶24–29); *Wylie* SAC (02–2997: Doc #7, ¶¶17–22), their oppositions both appear to make reference to multiple product liability "claims". *Miller* Pls Opp (Doc #17), at 21; *Wylie* Pl Opp (Doc #15), at 21.

Even though plaintiffs do not specify which, if any, of the other claims asserted they consider to be product liability claims, for the purposes of this motion, the court shall deem their opposition as directed also in defense of their breach of implied warranty claims. See *Scott v. CIBA Vision Corp.*, 38 Cal.App.4th 307, 44 Cal.Rptr.2d 902, 911 (1995) (characterizing breach of implied warranty as a products liability claim).

In these claims, plaintiffs allege that "the seating configurations and seats of the aircraft on which plaintiff was a passenger * * * were in a dangerous and defective condition * * * causing [plaintiff] to contract deep vein thrombosis," *Miller* TAC (02–1693: Doc # 10), ¶ 24; *Wylie* SAC (02–2997: Doc # 7), ¶ 17, that defendants impliedly warranted the safety of their seats on board the aircraft and that being subjected to the seats in question led to their development of DVT, *Miller* TAC (02–1693: Doc # 10), ¶¶ 30–31; *Wylie* SAC (02–2997: Doc # 7), ¶¶ 23–24.

Under California law, use of a defective product resulting in injury is an "essential element" of a cause of action for product liability. *Kanter v. Warner–Lambert Co.*, 99 Cal.App.4th 780, 122 Cal.Rptr.2d 72, 80 (2002); *Cronin v. JBE Olson Corp.*, 8 Cal.3d 121, 104 Cal.Rptr. 433, 438, 501 P.2d 1153 n. 5 (1972). In addition, it is plain that the sale allegedly giving rise to the implied warranty is based on a contract of carriage for international travel. These claims premise liability based on plaintiffs' use of the defective and unfit seating configuration during international travel and are therefore preempted by the Convention. Plaintiffs may not evade the Convention's scope through artful attempts to characterize their international air travel claims as product liability claims. See *Tseng*, 525 U.S. at 171, 119 S.Ct. 662 (rejecting constructions of the Convention that would "encourage artful pleading by

plaintiffs seeking to opt out of the Convention's liability scheme when local law promised recovery in excess of that prescribed by the treaty").

Plaintiffs appear to misapprehend the Supreme Court's opinion in *Zicherman v. Korean Air Lines Co., Ltd.*, 516 U.S. 217, 116 S.Ct. 629, 133 L.Ed.2d 596 (1996). While the Convention "does not affect the substantive questions of who may bring suit and what they may be compensated for," id at 229, 116 S.Ct. 629, it nevertheless prohibits claims based on local law asserted separately from a claim under the Convention itself. *Zicherman* does not hold that injured parties may assert local claims apart from the treaty itself. As the Supreme Court explained in *Tseng*, "the Warsaw drafters intended to resolve *whether there is liability*, but to leave to domestic law * * * determination of the compensatory damages available to the suitor." 525 U.S. at 170, 119 S.Ct. 662 (emphasis in original) (discussing *Zicherman*). The Convention "permit[s] compensation only for legally cognizable harm, but leave[s] the specification of what harm is legally cognizable to the domestic law applicable under the forum's choice-of-law rules." *Zicherman*, 516 U.S. at 231, 116 S.Ct. 629. Thus, local law plays a vital role in answering those substantive questions and functions in this regard only as a "pass-through" with respect to cognizable damages. Id at 229, 116 S.Ct. 629.

Miller, in her opposition papers, submits for the first time that Continental might not have operated the flights in question and that she may maintain her state claims against Continental because it did not act as a carrier under the Convention, but merely as a "ticket seller." *Miller* Pls Opp (02–1693: Doc # 17), at 24. But this assertion directly contradicts the actual allegations of Miller's complaint, which clearly states that both Air France *and*

Continental operated the flights and aircraft in question. *Miller* TAC (02–1693: Doc # 10), ¶ 10. Miller cannot rescue her state law claims against Continental by raising, for the first time in her opposition to dismissal, allegations that are inconsistent with those contained in her complaint. See *Schreiber Distrib. Co.*, 806 F.2d at 1401 (explaining that leave to amend may not be granted to allow allegation of facts inconsistent with the pleading).

Accordingly, insofar as plaintiffs attempt to assert state law claims apart from the treaty, they are limited by the Convention, the court DISMISSES these claims WITH PREJUDICE.

### C

The court also considers plaintiffs' claim for punitive damages. As discussed, the Convention provides an exclusive remedy for personal injuries sustained during international air travel. Article 17, in particular, provides liability for compensatory damages due to bodily injury.

Other provisions in the Convention, however, limit liability depending on whether the air carrier meets certain conditions. For example, under Article 20, an air carrier "shall not be liable if he proves that he and his agents have taken all necessary measures to avoid the damage or that it was impossible for him or them to take such measures." Nor does liability attach, pursuant to Article 21, if the carrier "proves that the damage was caused by or contributed to by the negligence of the injured person * * *." Most importantly for the court's present purposes, Article 22 provides a maximum liability per passenger.

With respect to flights to or from the United States, including those at issue here, this article was superseded by the Montreal Agreement, an agreement among air carriers executed in 1966 and approved by the Civil Aeronautics Board pursuant to its authority under the Federal Aviation Act of 1958. See Order of Civil Aeronautics Board Approving Increases in Liability Limitations of Warsaw Convention and Hague Protocol, May 13, 1966 (approving Agreement CAB 18900), 31 Fed Reg 7302 (1966), *reprinted at* 49 USC § 40105 note. Pursuant to this agreement, the per passenger liability limit is currently $75,000.

But if a plaintiff establishes willful misconduct by a carrier, "Article 25 lifts the Convention's limits on liability, but the Convention remains the exclusive source for the plaintiff's remedy." *Dazo v. Globe Airport Security Servs.*, 295 F.3d 934, 940 (9th Cir.2002).

Plaintiffs seem to misapprehend the function of Article 25 by arguing that proof of willful misconduct can be used to support a claim for punitive damages. The Convention provides no such relief. The presence of willful misconduct is relevant to determining whether the $75,000 per person liability limit applies, not whether punitive damages may be recovered. As the court has explained, the Convention supplies the exclusive remedy for personal injuries sustained during international air travel. Article 17 provides compensatory damages for those injuries. *Zicherman*, 516 U.S. at 225–26, 116 S.Ct. 629. In light of the preemptive and exclusive nature of the Convention's remedies, the court declines plaintiffs' invitation to allow claims for punitive damages to lie simply because they are not expressly precluded. See *In re Korean Air Lines Disaster of Sept. 1, 1983*, 932 F.2d 1475, 1479–81, 1484–90 (D.C.Cir.1991) (vacating punitive damages award; holding that the Warsaw Convention does not allow recovery of punitive damages), *cert denied*, 502 U.S. 994, 112 S.Ct. 616, 116 L.Ed.2d 638 (1991).

Plaintiffs' sole argument in defense of their punitive damages claim is that the

Ninth Circuit has not expressly held that punitive damages are barred under the Convention. See Pls Opp (02–1693: Doc # 17), at 24–25. But the Northern District case on which plaintiffs rely, *In re Air Crash Off Point Mugu, California on January 30, 2000*, 145 F Supp 2d 1156, 1162 (N.D.Cal.2001), severely undermines plaintiffs' position. In that case, Judge Legge cited nine cases, including the above-cited *Korean Air Lines* case and a Second Circuit case in which a petition for writ of certiorari was similarly denied, *In re Air Disaster at Lockerbie, Scotland on Dec. 21, 1988*, 928 F.2d 1267, 1284 (2d Cir.1991), *cert denied*, 502 U.S. 920, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991), to conclude that "this court has no reason to believe that, in the face of this overwhelming body of law, the Ninth Circuit's decision would be any different." 145 F.Supp.2d at 1161–62. For the reasons delineated above, the court concludes that plaintiffs' punitive damages claims must be DISMISSED WITH PREJUDICE.

### D

Finally, the court considers whether to dismiss Dobler's claims for loss of consortium and negligent infliction of emotional distress in the *Miller* case with prejudice. In plaintiffs' opposition, Dobler concedes that his claim for negligent infliction of emotional distress cannot be sustained. See Pls Opp (02–1693: Doc # 17), at 21. Accordingly, the court DISMISSES this claim.

Turning to Dobler's remaining derivative claim, for loss of consortium, the court begins by noting that Article 1 of the Convention provides that it applies "to all international transportation of persons, baggage, or goods performed by aircraft for hire." 49 Stat 3000.

■ Contrary to plaintiffs' assertion, the Convention's preemptive range is not limited solely to claims by the international traveler. Instead, the Convention's "cardinal purpose," as observed by the Supreme Court and recited earlier in this order, is to achieve uniformity of rules governing claims arising from international air transportation generally. *Tseng*, 525 U.S. at 169, 119 S.Ct. 662. Thus, the Convention extends to claims by non-passengers based on events during international air travel. Even Article 17, which provides the exclusive remedy for personal injuries under the Convention, delineates liability in universal terms and not merely in terms personal to the passenger. See *Diaz Lugo v. American Airlines, Inc.*, 686 F.Supp. 373, 376–77 (D.P.R.1988) (allowing damages for loss of consortium by non-passenger under Article 17 but rejecting all other local claims).

Dobler bases his loss of consortium claim on the "negligence of the defendants". *Miller* TAC (02–1693: Doc # 10), ¶ 32. While Dobler does not elaborate, it is clear that his claim is premised on alleged negligence occurring during the operation of the flight. See *Id.* (incorporating the preceding allegations in the TAC). As a result, Dobler's state law claim falls within the scope of, and is preempted by, the Convention.

But because Article 17 does not exclude claims not brought by the passenger, Dobler may very well be able to bring suit under the Convention and assert, as a basis for damages, the value of his loss of consortium claim. See *Zicherman*, 516 U.S. at 225, 229, 116 S.Ct. 629 (discussing division of damages among eligible claimants).

Only one of the authorities cited by plaintiffs has apparently upheld a loss of consortium claim separate from liability under the Convention, and the court finds that case unpersuasive for the reasons discussed below. See *Haldimann v. Delta Airlines, Inc.*, 168 F.3d 1324, 1324

(D.C.Cir.1999) (precise issue not presented on appeal; affirming partial summary judgment that flights at issue fell within the Convention); *Terrafranca v. Virgin Atlantic Airways, Ltd.,* 151 F.3d 108, 109 (3d Cir.1998) (did not reach precise issue because court affirmed summary judgment in favor of defendant); *Alvarez v. American Airlines, Inc.,* 1999 WL 691922, at *5–6 (S.D.N.Y.1999) (did not reach precise issue because the court dismissed loss of consortium claim).

In *Blansett,* the court did not dismiss the loss of consortium claim, but that court appears to have read *Zicherman*'s language concerning the Convention's "pass-through" aspect too broadly. The *Blansett* court "interpret[ed] *Zicherman* to permit non-passenger plaintiffs to bring any claims otherwise allowed under the applicable law," but failed to limit its application of *Zicherman* to the issue of determining legally cognizable damages under the Convention, the central issue before the Supreme Court in that case. See 204 F.Supp.2d 999, 1002 (S.D.Tex.2002). In addition, the *Blansett* court, without discussion, limited the Convention's scope to passengers only. As discussed, this court comes to a different conclusion.

Insofar as Dobler's loss of consortium claim is asserted as a cause of action apart from the Convention, it is preempted. The court therefore DISMISSES Dobler's loss of consortium claim WITH PREJUDICE. Dobler, however, is given leave to amend to allege his claim under treaty liability on or before April 25, 2003.

### III

In sum, the court GRANTS in part and DENIES in part defendants' motions to dismiss with prejudice (02–1693: Doc # 11; 02–2997: Doc # 8). Specifically, the court DISMISSES plaintiffs' amended complaints but WITHOUT PREJUDICE to claims asserted under the Warsaw Convention. Insofar as plaintiffs assert claims separate from the Convention, the court DISMISSES those claims WITH PREJUDICE. Plaintiffs may serve and file amended complaints (a fourth amended complaint in *Miller* and a third amended complaint in *Wylie* ) on or before April 25, 2003.

IT IS SO ORDERED.